## No. 7009.

### MRS. CAROLINE FORRESTER ET AL. VS. MOSES MANN.

The declaration made by a wife and her husband in a written contract that a certain plantation was her property, is not invalidated by the fact that she was a married woman.

Contracts made by a married woman personally, or by her authorized agent, for supplies and overseer's wages for the benefit of her separate plantation are, if recorded, binding on the crops grown on the plantation that year.

One who has formed a valid contract can not claim a release from its obligations, on account of an error of judgment, or ignorance of the law regulating the rights and obligations of married-women, in this State, when it appears that he had another motive for making the contract, besides the error of law, and no fraud, or bad faith is shown on either side.

APPEAL from the Seventh Judicial District Court, parish of West Feliciana. *Yoist, J.*

*Wickliffe & Fisher* for plaintiffs and appellants.

*W. W. Leake* for defendant and appellee.

The opinion of the court was delivered by

EGAN, J. W. W. Forrester was employed and acted as overseer on the plantation of Mrs. Richardson in the year 1875 at a salary of one thousand dollars. He also sold to her agent, Smith, for the use of the place the same year certain necessary supplies of corn, fodder, seed cane, etc., amounting to $3639. Both contracts were in writing, and recorded regularly, and the amounts were stipulated to be paid as privileged charges out of the crops of the year. A few days before they became due Forrester transferred these claims to the defendant Mann in consideration of a mortgage note of Smith for $2500, besides interest accrued and to accrue, and $1840, which Mann undertook and agreed to pay him by the first of January, 1876. Mann, who was a merchant, also advanced to Mrs. Richardson for the use of the place that year to the amount of several thousand dollars under contract with the same agent Smith, who it seems managed every thing connected with the plantation,

crops, etc., and made, and was fully authorized to make, all contracts and to enter into all obligations in relation to it by virtue of a written power of attorney containing the fullest and most minute general and special powers which could be conferred under the law. Mann received and sold the crops of the year and applied the proceeds to the payment of his account, which was kept in the name of Smith, agent, leaving a balance due him of only $195 75. In this account was included a charge of $1000 for the wages of Forrester as overseer. It appears, and is admitted, that Mann paid to Forrester $918 77 of the $1840 agreed to be paid by the written contract between them evidencing the transfer of Forrester's privileged claims against Mrs. Richardson and the crops raised on her plantation in 1875, to obtain the undivided and undisputed control of which seems to have been his object in purchasing those claims from Forrester. There is some evidence that the latter threatened to seize the crops, unless he was paid, and it is not unreasonable or improbable to suppose that he would have done so but for the agreement with Mann. Mann denies his knowledge of these threats, or that they were made to him, but we do not consider that fact very material. Forrester is dead, and Mann alone is left to testify as to the motives of their agreement. We think, however, they sufficiently appear from the attendant circumstances, and that they were that Mann might without molestation or hindrance control all the crops of the year. The plaintiffs, widow and heirs of Forrester, sued to recove rthe balance due by Mann under that contract, which is shown by the accounts of Mann himself rendered to Forrester, who also dealt with him, to be $921 23. The defendant sets up error and failure of consideration, and a reconventional demand of $2400 on account of the note of Smith transferred to and alleged by him to have been collected by Forrester and moneys paid to him under the contract. The error and want of consideration are based upon the alleged fact that Mrs. Richardson was a married woman at the time the contract for overseer's wages and the purchase of supplies from him was entered into by Smith as her agent; that the plantation did not belong to her; that the agent had no authority to bind her, and that the consideration did not inure to her benefit. It is further set up that defendant had sued her on the claim for supplies furnished by Forrester, and judgment was rendered against him whereby the obligations of warranty in the transfer became exigible from the latter and his heirs. The fullest possible authority, as we have already remarked, was vested in Smith by a written power of attorney executed by Mrs. Richardson with the authorization of her husband with especial reference also to the making just such purchases and contracts. In this power of attorney, which relates specially to the management and control of the plantation, crops, etc., it is recited that Mrs. Richardson had

become the purchaser and owner of the Island plantation, in this parish, at sheriff's sale, this day made, which said property is fully described in the sheriff's transfer. This is the plantation in question. There is no other evidence on the subject; there is nothing in the record to show that she was not, as she and her husband asserted, the owner, unless it may be said because she was a married woman in 1875. We think this is a *non sequitur*. It needs no argument to show that a married woman may own, control, and contract for the benefit of separate property. This property was managed and controlled by her agent and in her name, especially to the knowledge of this defendant as of Forrester, as is shown by the fact that he himself credited and dealt with the same agent in that capacity and through him received, controlled, and appropriated to his own account the crops raised upon the plantation in 1875 by virtue of no other or greater right than those with which Forrester was clothed, and, indeed, as we have seen, actually collected and received through the proceeds of the crops made on this plantation, the amount of the overseer's wages by virtue of his transfer from Forrester. It is further shown that he resided in the neighborhood and was on the plantation while Forrester was actually rendering the services; and it is quite evident that he was as well aware of all the facts as Forrester himself, as to the conduct of whom there is not the slightest shadow of fraud or concealment in any thing, but, on the contrary, the most perfect good faith. It is not pretended or shown either that Forrester did not render the services or furnish the supplies which constituted the consideration for the obligations transferred to Mann, nor is their privileged character questioned. On the contrary, both are established. It is manifest that at the time of the transfer Mann expected to collect the amount of both claims out of the proceeds of the crops, and that it is only because they did not produce enough that the present pretext of error is set up. If there was error, it was of judgment, or at most of law, as to the title to the property standing in the name of Mrs. Richardson, and managed for her by an agent of her own selection and creation.

The defendant can not plead ignorance of the law regulating the rights and obligations of married women in Louisiana. In his position it was his business, and, indeed, we must presume that he was, in fact, much more familiar with the law on that subject than Forrester. It is also evident that whether a personal obligation rested on Mrs. Richardson or not, an obligation and privilege did exist on the crops in favor of the claims of Forrester so transferred to the defendant, and, indeed, it was actually so decreed in the very suit against her by the defendant which is offered here in support of his defense and reconventional demand. It is then evident that his desire to control the privileged

claims, and to avoid a conflict of claims was at least one of the causes, and it seems to us the principal cause, of the contract, and not the error of law only, if indeed it existed, as we think is not sufficiently shown in this record. Domat says, vol. 1, sec. 1240: "If the error of law has not been the only cause of the covenant, and he who has done himself some prejudice may have had some other motive, the error will not be sufficient to annul the contract." Our own Civil Code, art. 1846, says: "Error in law as well as error in fact invalidates a contract *when such error is its only or principal cause*, subject to the following modifications and restrictions," among which is enumerated "a contract made for the purpose of avoiding litigation," which it is declared "can not be rescinded for error of law." Judge Story in his Equity Jurisprudence, vol. 1, s. 149, says: "Where the means of information are open to both parties, and where each is presumed to exercise his own skill, diligence, and judgment in regard to extrinsic circumstances, equity will not relieve," and "the like principle applies to all other cases where the parties act upon their own judgment in matters mutually open to them." In like manner he further says: "Where the fact is equally unknown to both parties; or where each has equal and adequate means of information; *or where the fact is doubtful from its own nature; in every such case where the parties have acted with entire good faith*, equity will not interpose, for in such cases the equity is decreed equal between the parties." And again he says: "The like rule will apply to all cases of sale of real or personal estates made in good faith, where material circumstances affecting the value are equally unknown to both parties;" s. 150, same volume. In the next section he announces the general rule to be that "mistake or ignorance of facts is a proper subject of relief only where it is a material ingredient in the contract, and disappoints the intention of the parties by a mutual error, or where it is inconsistent with good faith. But where each party is equally innocent, and there is no concealment of facts which the other party has a right to know, and no surprise or imposition exists, the mistake or ignorance, whether mutual or unilateral, is treated as laying no foundation for equitable interference. It is strictly *damnum absque injuria*." The principles of our own law do not materially vary from those thus announced by these two eminent authors, except as we have seen that with us the error must have been as to the entire or principal part of the consideration, even where it is as to matters of law. The same rule applies where the error is as to matters of fact. See C. C. art. 1825; see, also, C. C. art. 1845; while art. 1826, C. C., provides that "no error in the motive can invalidate a contract unless the other party was apprised that it was the principal cause of the agreement, or unless, from the nature of the transaction, it must be presumed that he knew it." No such proof is

made in the present case, nor does any such presumption arise in a transaction for the transfer of rights which it is well known derive their chief value and security from their privilege upon the crops of the year. Had it not been so in this instance, who would suppose that the defendant would have exchanged for the claims of Forrester his own personal obligation and a mortgage note which he alleges not only to have been collectable, but actually collected, and both together amounting to very nearly or quite the sum of the claim purchased from Forrester. But, again, not only did the defendant actually collect the $1000 for overseer's wages out of the crops of the year, but he was allowed by the judgment of the court in the suit by himself against Mrs. Richardson a privilege upon all the property sequestered in that case, and an order for its sale to pay the amount of the other claim transferred, although the court denied him a personal judgment against Mrs. Richardson, the propriety of which denial may well be questioned if it rested upon no other foundation than the facts in the case at bar; upon which facts, at all events, must rest the rights of the defendant here.

Now it nowhere appears, and it was the duty of the defendant to have shown the amount realized by him under the judgment in question; *non constat* but that it may have paid the entire debt; at all events, the evidence was in his power and he should have produced it. The fact that he has not done so by no means operates in his favor. But aside from this, the account of the defendant discloses many and considerable items which are not shown to have been privileged charges against the crops, and some of which certainly are not; such as payment of premiums on life policies, taxes, whisky, table-cloths, cheese and crackers, braids, ribbon, corsets, fine-tooth combs, cash paid on Canfield note, and many charges of "sundry merchandise," without stating its character, while some of the largest items of account, amounting to more than $500, are proved by the testimony of one witness almost if not quite unsupported; and although the defendant himself was a witness, he only swore that Scott, Mrs. Richardson's agent, made no objection to the account. This might do as between them, but certainly not as against the present plaintiffs. Take off, then, the amount of the items not shown to be privileged on the crop, and the defendant received, if not quite enough, at least a very considerable sum, which should have been applied for that reason to the claim obtained from Forrester. Again, were the whole amount privileged, Forrester's claims were at least of equal privilege; see C. C. s. 217, and it was the duty of Mann to have so treated them, and applied the proceeds of the crops; and if, in addition, we deduct from defendant's account against Scott, agent, the items not privileged, or not shown to be so, without going further the full claims of Forrester would be paid

from the proceeds of the crop by imputation of law; and no agreement or imputation, tacit or other, and no other is here claimed between Scott and Mann, could affect the rights of Forrester or his widow and heirs. But from all the facts of the case, as developed in this record, we not only think that it was the duty of Mann to have applied the proceeds of the crops to the Forrester claims for the reasons already stated, but also for the further reason that by his purchase of them he had deprived Forrester of the power and opportunity to protect himself and enforce at least his privileges, as he would no doubt have done; and because we think it is evident that Mann bound himself absolutely and with his eyes open, and without any deceit or concealment of any fact by Forrester, to pay the price stipulated; and if there was any error, it was the result of his own miscalculation as to the amount of the crop, or its proceeds, of which he has not offered any other evidence than his own statements of account, the correctness of the charges in which, as a whole, is not otherwise shown than by the statement that Scott made no objection to the account as rendered, although some of the items are sworn to by one of the witnesses, and the defendant swears that he received no other sugars or molasses of the crop than those credited in the account.

But, again, the defendant's recorded contract to furnish supplies was only to the extent of $5000, less than half the amount of his account; to which may be added a note of Mann, Fischer & Co. for $1911 20, consideration not shown at all, while the same act or instrument contains an express stipulation for the payment, out of the crops, of the Forrester note for supplies furnished, amounting to $3799, and as will be seen by reference to the note itself, which was of record the same day, bearing eight per cent interest from November 1, 1875. While, as we have already seen, the balance against Scott, agent, was only $195 75 on an account with defendant aggregating within a fraction of $13,000, certainly the defendant could not claim to be paid under any view, and even were Forrester's privileges not concurrent, as they were, beyond his registry before paying the Forrester claims. This would pay the latter claims entire and leave a margin still applicable to the defendant's unregistered claim.

We will dismiss the case with the remark that the judgment disallowing the defendant a personal judgment against Mrs. Richardson, and which is claimed to have operated a breach of warranty as against Forrester, was rendered on the twenty-eighth of March, 1876; and that subsequently, as late as the fourteenth of June, 1876, defendant, who had previously rendered an account showing a balance due Forrester of $945 23, rendered another statement to the same effect, referring to that already rendered, and only deducting from that amount two items

amounting to $24, but still stating a balance due of $921 23. This was at least singular, if there was any thing in his defense to the present action, which was filed on the twenty-ninth of May, 1877. This admission of indebtedness at least could hardly be said to have been made in error or in ignorance of the facts, and neither the defendant nor any other witness has testified that it was so made. It is unnecessary to pass upon the plaintiffs' plea of prescription filed in this court to the reconventional demand, as the latter has no foundation.

The judgment appealed from was erroneous, and is therefore avoided and reversed, and it is now decreed that defendant's demand in reconvention be rejected, and that plaintiffs do have and recover from defendant, Moses Mann, nine hundred and twenty-one dollars and twenty-three cents, with eight per cent interest from November 1, 1875, and costs of both courts.